UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VINSON TATE, | |
| Petitioner, | |
| v. | CAUSE NO. 3:22-CV-934-MGG |
| WARDEN, | |
| Respondent. | |

## OPINION AND ORDER

Vinson Tate, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2013 drug conviction in Allen County under case number 02D05-1206-FA-28. (ECF 1.) For the reasons stated below, the petition is denied.

I.  BACKGROUND

On post-conviction review, the Indiana Court of Appeals set forth the facts underlying Mr. Tate's conviction as follows:

> In June 2012, an undercover police officer was dispatched to an apartment complex following a call about the sale of drugs. There, the officer observed several people hop in and out of a black Suburban idling in the parking lot. Eventually, the Suburban left the parking lot, and the undercover officer followed in her unmarked vehicle. The undercover officer saw the Suburban cross the center line several times and relayed this information to a uniformed police officer, who initiated a traffic stop. The uniformed officer identified Tate as the driver and noticed marijuana residue on the console. A search of the vehicle revealed more marijuana residue and $3,000 in cash.
>
> Tate was arrested for marijuana possession and taken to jail. There, a strip search revealed a folded wad of toilet paper between his buttocks. Officers discovered 15 small, knotted bags of cocaine inside the wad, leading to

> charges of Class A felony cocaine possession and Class A misdemeanor marijuana possession.
>
> At a pretrial hearing, Tate's public defender (Pretrial Counsel) moved to suppress the evidence discovered as a result of the traffic stop, alleging the stop was illegal. The trial court denied the motion. Shortly thereafter, the trial court approved Tate's request to proceed pro se.
>
> At trial, Tate took the stand in his own defense and maintained that the cocaine was for personal use. He testified, "I am in no way going try to (sic) defer responsibility for the cocaine. I never have. It was found on me and I never intended on trying to deflect responsibility for it basically. But the intentions on trying to sell this cocaine is totally off the charts." Tate explained that he planned to take the drugs to a hotel room with a woman and just "let go."
>
> On cross-examination, however, the State elicited the following exchange:
>
>> Q. And your intent was to pick up this other lady?
>> A. It was.
>> * * *
>> Q. And what were you going to be doing?
>> A. Possibly ingesting drugs and alcohol and couple other things.
>> * * *
>> Q. Okay. How was this lady going to get this cocaine, Mr. Tate?
>> A. I was going to give her some of mine.
>
> The jury convicted Tate of dealing in cocaine, a Class A felony, and possession of marijuana, a Class A misdemeanor.

*Tate v. State*, 176 N.E.3d 596 (Table), 2021 WL 4929093, at *1 (Ind. App. Ct. Oct. 22, 2021) (internal citations and headnotes omitted). Because of his criminal record, which included two prior convictions for obstruction of justice and another for dealing in cocaine, he was sentenced to an aggregate 45-year prison term, with 10 years suspended to probation. *Tate v. State*, 31 N.E.3d 34 (Table), 2015 WL 1228312, at *3 (Ind. Ct. App. Mar. 17, 2015).

On direct appeal, he was represented by counsel, who asserted the following claims on his behalf: (1) the trial court erred in permitting him to proceed without counsel; (2) the trial court abused its discretion in denying his motion to reschedule the trial for a third time; (3) the trial court erred in admitting and excluding certain evidence; (4) the evidence was insufficient to support his conviction; and (5) his sentence was unduly long. *Id.* at *4-10. The Indiana Court of Appeals rejected these arguments and affirmed his conviction. *Id.* His counsel sought transfer to the Indiana Supreme Court on his behalf reasserting all of the same claims, with the exception of the challenge to his sentence. (ECF 8-7.) The Indiana Supreme Court denied transfer on June 4, 2015. *Tate v. State*, 31 N.E.3d 976 (Table) (Ind. 2015). He did not seek review in the U.S. Supreme Court. (ECF 1 at 1.)

On January 11, 2016, Mr. Tate filed a *pro se* post-conviction petition in state court.[1] (ECF 9-26 at 38-45.) The petition was denied. *Tate*, 2021 WL 4929093, at *2. He proceeded *pro se* on appeal, arguing several grounds of ineffective assistance of counsel. *Id.* at *2-3. He claimed that his pretrial attorney failed to properly investigate the case and mishandled the pretrial suppression hearing. *Id.* at *2. He further claimed that his counsel on direct appeal was ineffective by failing to raise certain arguments. *Id.* The

---

[1] The respondent asserts that the post-conviction petition was filed on January 15, 2016, which is the date the petition was file-stamped by the clerk. (ECF 8-8 at 2; ECF 9-26 at 38.) Mr. Tate argues that his petition should be deemed "filed" on January 11, 2016. (ECF 1 at 2.) As a prisoner, Mr. Tate is entitled to the benefit of the prison mailbox rule, under which his documents are deemed filed on the date he tenders them to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266 (1988). He did not provide the full date when signing the petition and instead listed the date only as "January 2016," without including a day of the month. (ECF 9-26 at 45.) However, the petition was notarized on January 11, 2016. (*Id.*) The court will afford him the benefit of the doubt and accept January 11, 2016, as the operative filing date.

3

Indiana Court of Appeals rejected these claims, concluding that Mr. Tate failed to establish prejudice in connection with these alleged errors in light of the record. *Id.* at *2-3. He sought transfer to the Indiana Supreme Court reasserting the same claims. (ECF 8-14.) The Indiana Supreme Court denied transfer on January 20, 2022. *Tate v. State*, 180 N.E.3d 934 (Table) (Ind. 2022).

On October 25, 2022, Mr. Tate filed his federal petition asserting various claims of ineffective assistance of counsel. He acknowledges that the petition was not timely filed and requests equitable tolling of the deadline. (ECF 1 at 5.) The respondent argues that the petition should be denied as untimely or, alternatively, denied on the merits. (ECF 8.) Mr. Tate filed a traverse in support of his petition again requesting equitable tolling, and further arguing that the state court erred in adjudicating his claims. (ECF 14.)

II. ANALYSIS

    A. Timeliness

Mr. Tate's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

4

>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Mr. Tate does not argue, nor is there a basis in the record to conclude, that his claims are based on newly discovered facts or a new Supreme Court case made retroactive to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(C)-(D). Instead, he asserts run-of-the-mill ineffective assistance of counsel claims based on events occurring prior to trial and on direct appeal. He also does not identify a state-created impediment that prevented him from filing his petition on time. *See* 28 U.S.C. § 2244(d)(1)(B). By process of elimination, 28 U.S.C. § 2244(d)(1)(A) applies.

On direct appeal, the Indiana Supreme Court denied transfer on June 4, 2015. *Tate v. State,* 31 N.E.3d 976 (Table) (Ind. 2015). Mr. Tate did not seek certiorari in the Supreme Court. (ECF 1 at 1.) His conviction became final for purposes of AEDPA on September 2, 2015, when the 90-day period for seeking certiorari in the Supreme Court

5

expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (when a state prisoner does not petition for review in the Supreme Court on direct appeal, his conviction becomes final when the time for seeking review expires); U.S. SUP. CT. R. 13 ("[A] petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment."). At that point, the one-year clock began running and it ran for 131 days, until January 11, 2016, when Mr. Tate filed his petition for post-conviction relief in state court. *See* 28 U.S.C. § 2244(d)(2). The deadline remained tolled until January 20, 2022, when the Indiana Supreme Court denied transfer on post-conviction review. *Tate*, 180 N.E.3d 934. At that point, he had 234 days remaining on the federal clock, making his petition due by September 12, 2022. However, he did not file the petition until October 25, 2022, more than a month late.[2]

In both his petition and his traverse, he requests equitable tolling of the deadline. (ECF 1 at 5; ECF 14 at 4-5.) Equitable tolling is a common law doctrine that may be applied to excuse an untimely filing if the petitioner can establish that he "has been pursuing his rights diligently" but was prevented from filing on time due to some "extraordinary circumstance" that stood in his way. *Holland v. Florida*, 560 U.S. 631, 649

---

[2] The court notes that the petition is dated "1/25/2022" but it is apparent from context that this was a scriveners' error and that it was actually signed on October 25, 2022. Mr. Tate included a timeliness analysis at the end of the petition using October 25, 2022, as the operative filing date. (ECF 1 at 5.) He acknowledged that his petition was filed after the September 2022 deadline (by his account it was 31 days late), and requested equitable tolling. (*Id.*) Along with the petition, he contemporaneously filed a motion for leave to proceed in forma pauperis that he signed on October 25, 2022, and attached a printout showing charges to his trust account through October 2022. (ECF 2.) The respondent noted this discrepancy in the return (ECF 8 at 6 n.2), and nowhere in his voluminous filings does Mr. Tate dispute the October 25, 2022, filing date or argue that he tendered the petition to prison officials earlier. He is clearly aware of the prison mailbox rule as he seeks its application in connection with another filing. (*See* ECF 14 at 6.)

6

(2010); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[E]xtraordinary circumstance" means something "beyond the applicant's control that prevents timely filing." *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). Whether a particular situation warrants tolling is a fact-specific determination. *Holland*, 560 U.S. at 652. Equitable tolling is "an extraordinary remedy that is rarely granted." *Mayberry v. Dittmann*, 904 F.3d 525, 529 (7th Cir. 2018). Miscalculation of the deadline or lack of knowledge of the law does not provide grounds for tolling. *See Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014) ("[P]risoners' shortcomings of knowledge about the AEDPA or the law of criminal procedure in general do not support tolling."); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling.").

Mr. Tate asserts that he is entitled to tolling because he contracted COVID-19 and was quarantined during part of 2021. (ECF 1 at 5; ECF 14 at 2-4.) He provides documentation from a prison employee reflecting that he was quarantined from December 1, 2021, to December 14, 2021, after having been exposed to the virus. (ECF 1-1.) However, the limitations period was already tolled during that period because the post-conviction proceeding was still pending. That proceeding did not come to an end until January 20, 2022, when the Indiana State Court denied his petition to transfer. *Tate*, 180 N.E.3d 934. Therefore, excluding this two-week period in December 2021 from the calculation would not render the petition timely.

7

He further asserts that he had lingering COVID-19 symptoms for approximately 60 days after his quarantine ended, which "slowed his ability to engage his legal work as previously done." (ECF 1 at 5.) A physical or mental impairment can provide grounds for equitable tolling. *Perry*, 950 F.3d at 412. Mr. Tate provides no documentation to reflect that he suffered long-term COVID-19 symptoms, but even accepting this as true, by his own account his symptoms lasted until mid- to late February 2022. He does not explain why he waited another eight months to file his federal petition. "[E]quitable tolling is available only to applicants who diligently tried to protect their rights." *Perry*, 950 F.3d at 412. Mr. Tate has not made that showing here. Nor can the court conclude that the virus actually "prevented" him from filing on time, as he argues only that his symptoms "slowed . . . his legal work" during the early part of 2022. (ECF 1 at 5.) The extraordinary remedy of tolling is not warranted under these circumstances.

He alternatively argues that the federal deadline was tolled during the time he had a prior federal petition pending. (ECF 14 at 4.) Public records reflect that Mr. Tate previously challenged this same conviction in a habeas petition filed in October 2015. *Tate v. Superintendent*, No. 3:15-CV-459-RLM (N.D. Ind. closed Oct. 29, 2015.) The petition was dismissed without prejudice on October 29, 2015, because Mr. Tate had not exhausted any of his claims in state court. (*Id.*, ECF 4.) He moved to alter the judgment, and the court denied the motion on December 11, 2015. (*Id.*, ECF 8.) In Mr. Tate's view, the roughly two months between the date he filed the federal petition and the date the court denied his motion to alter the judgment should not be counted when calculating

8

the federal deadline. (ECF 14 at 4.) In other words, he believes 60 days should be added to the September 2022 deadline to account for the time his earlier petition was pending, rendering the present petition timely.

This argument is unavailing. It can be discerned that he is invoking 28 U.S.C. § 2244(d)(2), under which "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" The Supreme Court has made clear that this provision only applies to proceedings in *state* court. *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). The Supreme Court has expressly held that a federal habeas petition does not toll the limitations period under this provision. *Duncan v. Walker*, 533 U.S. 167, 172-73 (2001). Although equitable tolling might apply where the initial federal petition is timely and is dismissed on exhaustion grounds after the federal deadline has expired, that is not what occurred here. *See id.* at 180. Mr. Tate's initial petition was dismissed in October 2015, only a few weeks after the federal limitations period began running. Nothing that occurred in the 2015 case prevented him from filing his federal petition on time in 2022. The petition is therefore untimely and cannot be considered on the merits.

    B.    Merits

Even if Mr. Tate could overcome the time bar as discussed above, his claims would not entitle him to federal habeas relief. Under AEDPA, a court may issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas

corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and quotation marks omitted). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Hoglund*, 959 F.3d at 832 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). To prevail, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

10

Mr. Tate's claims center on the performance of the attorneys who represented him before trial and on direct appeal. To prevail on a claim of ineffective assistance, the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Harrington*, 562 U.S. at 105. An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). The petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Gilbreath*, 21 F.4th at 981. The court's review of counsel's performance on habeas review is highly deferential: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The court also must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). Counsel is afforded significant discretion in selecting a trial strategy based on the information known at the time. *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Gilbreath*, 21 F.4th at 982.

11

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Gilbreath*, 21 F.4th at 981 (citation omitted). In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. If the defendant wanted counsel to raise an argument that had no merit, an ineffective-assistance claim cannot succeed because "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

    1.    Pretrial counsel

Up until the time he was granted leave to represent himself, Mr. Tate was represented by attorney Bart Arnold. He claims that Mr. Arnold did not adequately investigate the circumstances surrounding the traffic stop and erred in his handling of the suppression hearing. (ECF 1 at 9-14.) His claims center around his belief that the traffic stop was improper because the officer who pulled him over was not the officer who had personally observed him engaging in suspicious behavior and committing

12

traffic infractions. In his view, had Mr. Arnold done more on this issue, the cocaine evidence obtained as a result of his arrest would have been excluded.

In rejecting Mr. Tate's ineffective-assistance claims on post-conviction review, the state court properly identified the *Strickland* standard.[3] *Tate*, 2021 WL 4929093, at *2. The court determined that he could not make the necessary showing of prejudice because the trial court's ruling in the suppression hearing was only preliminary. Thus, he could have cured an error made in the suppression hearing by objecting to the admission of the cocaine evidence at trial, but did not do so. *Id.* Therefore, the court concluded that he failed to make the necessary showing of prejudice. *Id.* This was not an unreasonable application of *Strickland. See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

If Mr. Tate is challenging the state court's finding that he did not properly preserve an objection to the admission of the cocaine under state law, this is a matter on which the state court is the final authority. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (a federal habeas court has no authority to "second-guess state courts in interpreting state law"). Furthermore, Mr.

---

[3] The Indiana Court of Appeals did not cite to *Strickland* and instead cited to state case law which in turn cited *Strickland. Tate*, 2021 WL 4929093, at *2. The court articulated the standard as requiring a defendant to show that: "(1) counsel's performance fell below an objective standard of reasonableness such that defendant was deprived 'counsel' as guaranteed by the Sixth Amendment; and (2) the deficiency was so prejudicial as to create a reasonable probability the outcome would have been different but for counsel's errors." *Id.* Under AEDPA, a state court need not cite to or even be aware of applicable Supreme Court case law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Indiana Court of Appeals' decision does not contradict Supreme Court precedent and is in in accord with *Strickland*.

13

Tate's claims that counsel did not sufficiently investigate the traffic stop or challenge the admission of evidence resulting from his arrest are based on a misunderstanding of the collective knowledge doctrine. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of the facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). Here, the record reflects that the undercover officer who witnessed Mr. Tate engaging in suspicious behavior and committing traffic infractions conveyed this information to the second officer. *Tate*, 2015 WL 122812, at *1. Under the collective knowledge doctrine, this second officer was permitted to conduct a traffic stop based on the information that was conveyed to him. *Williams*, 627 U.S. at 252.

There is nothing in the record to reflect that had Mr. Arnold handled this issue differently, he could have prohibited the state from relying on the collective knowledge doctrine or had the cocaine evidence excluded. *Warren*, 712 F.3d at 1104 ("Counsel is not ineffective for failing to raise meritless claims."). Mr. Tate faults Mr. Arnold for not objecting to "hearsay" at the suppression hearing, but under state law the rules of evidence do not apply at such hearings. *See* IND. R. EVID. 101(d), 104(a). He argues that counsel was deficient in not requesting a continuance of the suppression hearing, but he does not identify what other evidence counsel could have developed during a continuance that would have aided the defense. *See Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (habeas petitioner claiming counsel failed to properly investigate must allege what an investigation would have revealed). He also argues that counsel

14

should have challenged the state's reliance on the "plain view" doctrine to justify his arrest, but the testimony he points to occurred at trial, when Mr. Arnold was no longer representing him.[4] (*See* ECF 1 at 16; *see also* ECF 9-7 at 186.) Counsel cannot be blamed for failing to take action at a point when Mr. Tate was representing himself.

He also argues that counsel should have pursued an interlocutory appeal of the suppression ruling, but his appellate counsel challenged the traffic stop and the admission of evidence resulting from it on direct appeal, and the Indiana Court of Appeals found no error. *Tate*, 2015 WL 1228312, at *6-8. There is nothing in the record to suggest the state court's decision would have been different had the issue been raised in an interlocutory appeal rather than after trial. Therefore, his claims pertaining to Mr. Arnold's performance are unavailing.

2.  Appellate Counsel

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to

---

[4] The state court determined that the second officer had a basis to arrest Mr. Tate because he personally observed marijuana residue in plain view on the center console of Mr. Tate's vehicle. *Tate*, 2015 WL 1228312, at *1. Mr. Tate argues that there was nothing in the plain view of this officer, but under 28 U.S.C. § 2254(e), the state court's factual findings are presumed correct, unless Mr. Tate rebuts that presumption with "clear and convincing evidence." He has not offered evidence to rebut this finding, let alone clear and convincing evidence. He argues that video from the officer's dashboard camera did not support the officer's version of events, but he was permitted to play the video in its entirety for the jury. It is not the province of a habeas court to reweigh the evidence or substitute its own judgment for that of the finder-of-fact. *Ford v. Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997).

maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790.

Mr. Tate was represented on direct appeal by attorney Gregory Fumarolo, who filed a 49-page brief on his behalf, challenging the traffic stop, asserting various trial errors, challenging his waiver of counsel, and arguing for leniency in sentencing. (ECF 8-3.) Mr. Tate believes counsel should have done more to have the cocaine evidence excluded. (ECF 1 at 25-40.) In rejecting his claim on post-conviction review, the Indiana Court of Appeals concluded that he failed to make the necessary showing of prejudice. *Tate*, 2021 WL 4929093, at *3. This was not an unreasonable application of *Strickland*.

As discussed above, Mr. Tate did not properly preserve an objection to the cocaine evidence at trial, when he was representing himself, and his appellate counsel was thus limited in his ability to challenge this evidence. Counsel did challenge the traffic stop, but his argument was not successful. Mr. Tate believes counsel should have done more, but his arguments again appear to be premised on a misunderstanding of the collective knowledge doctrine. Under the doctrine, the second officer was permitted to conduct a traffic stop based on information conveyed to him by the undercover officer. It was the second officer's own observations—the marijuana residue on the center console of his vehicle—that led to his arrest. When Mr. Tate stiffened during a pat-down search, the officer was permitted to conduct a strip search to determine

16

whether he was hiding contraband upon his entry at the jail. *Campbell v. Miller*, 499 F.3d 711, 718 (7th Cir. 2007); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983). There is no indication a challenge to these issues would have led to a remand or reversal.

Furthermore, Mr. Tate cannot show prejudice based on the other evidence in the record. Importantly, he admitted on the stand to possessing 15 individually wrapped baggies of cocaine totaling 5.74 grams.[5] *Tate*, 2015 WL 1228312, at *1. He also admitted that he was going to give some of the cocaine to a female friend. *Id.* Even if the jury did not believe he was going to sell the cocaine, this alone was enough to convict him. Under Indiana law, "delivery" means "an actual or constructive transfer from one . . . person to another of a controlled substance." IND. CODE § 35-48-1-11. This includes giving the drugs to a friend. *See Graham v. State*, 971 N.E.2d 713, 719 (Ind. Ct. App. 2012) (defendant's admission that he intended to share drugs in his possession with two passengers in his vehicle was sufficient to support his conviction for dealing in cocaine). There is no basis to conclude that had Mr. Fumarolo raised the arguments Mr. Tate points to, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790.

---

[5] To convict under the law at that time, the state was required to prove that Mr. Tate possessed cocaine in an amount greater than three grams with intent to deliver. *Tate*, 2015 WL 1228312, at *9 (citing IND. CODE ANN. § 35–48–4–1 (West 2012)).

Based on the record, the state court's resolution of Mr. Tate's ineffective assistance of counsel claims was not objectively unreasonable. Thus, even if he had filed his federal petition on time, he would not be entitled to federal habeas relief.

C. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. Tate's petition is untimely and his claims are without merit under governing standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. Tate to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III. CONCLUSION

For these reasons, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on September 6, 2023

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge